The next case today is Ken's Foods, Inc. v. Steadfast Insurance Company, Appeal Number 21-1649. Attorney Greene, please introduce yourself for the record and proceed with your argument. May it please the Court, Lawrence Greene, representing the appellants at Ken's Foods, Inc. If I may have two minutes for rebuttal, Your Honor. Yes, you may, Mr. Greene. Thank you, Your Honor. It is beyond any dispute in this case that because of the mitigation efforts that Ken's made in preventing a plant shutdown, that Steadfast was saved $10 million in policy coverage because there was no shutdown. The Sotheby's affidavit, which is at 159 of the record appendix and which is beyond any dispute, says that this plant was doing such volume here that very quickly that $10 million policy limit would have been reached if this plant had been shut down. Instead, as set forth in the Burnett affidavit, which has again not been rebutted in any way, it's at appendix 164, Ken's made a number of efforts to mitigate damages and indeed heroic efforts to do so, all in compliance with the Georgia State authorities. The efforts are spelled forth more fully in the Burnett affidavit. We are here, Your Honors, because Steadfast, even though it was that Ken's expended on the mitigation effort. There's no dispute that we are before you on the de novo standard. Steadfast has not challenged that. We would submit to the court that the Vitecourt v. Vigilant case, which this court wrote in 2012, Judge Howard was the author of that decision, that that decision is very much authoritative in this case. In the Vitecourt case, an insured was held to be able to recover extra expenses over and above ordinary costs of repairs that reduce the overall loss, all as a corollary to the traditional requirement that a party must take reasonable efforts to mitigate damages. No one argued the point in Vitecourt, did they? No one argued the issue in Vitecourt. Yes, Your Honor. I think it was beyond any dispute in Vitecourt that that was the case here. Now we have a case where we have two parties taking a different position on the issue. But we are also talking, Your Honor, about a well-recognized principle of law, the principle of mitigation of damages here. It was frankly beyond any dispute. Did your client owe a duty under the contract to mitigate? Yes, we did, Your Honor. There was, in fact, in the insurance contract, a duty to mitigate. But we are not here to in any way rewrite the contract. Let me stay with that. That duty under the contract to mitigate, as I recall, it was limited to post-commencement of, you know, there had to be a suspension of operations and then the duty to mitigate became operative. There is a duty to mitigate clause that appears there, Your Honor, but we are not going under that clause. Let me ask you then, since that clause doesn't apply, do you contend that your client had a duty to mitigate? Our contention, Your Honor, is yes, as a principle of common law, as in any case, there is a duty to mitigate damages, that this is widely recognized in the case law that we have cited, and that there is a concomitant duty on the part of the insurer that has been saved money in case there is mitigation, and Vicor sets up a two-part test in this regard. Is this even a mitigation case, or is this a prevention case? It is a mitigation case, Your Honor, and that is another argument that I think... Why is that? Because no harm... Mitigation says to me you're reducing the amount of damage that would otherwise occur. Prevention is you're preventing the event from causing any suspension. Here, it seemed to me they never had any suspension. They prevented the pollution event from causing a suspension. This is a crux of our difference in this case, Your Honor. There was a triggering event in terms of the anaerobic system malfunctioning and causing wastewater to come into these areas here. This is very much unlike the Roach Brothers case where we have a store owner at Roach Brothers who says, gee, we had a lot of snow last night. Maybe we should plow that snow to prevent a structural loss, and then let's make a claim to the insurance company. That is a prevention case. This is a mitigation case because the triggering event already took place in spades. There was a huge problem that was there. Our client has a common law duty to mitigate damages here, and the client did that. KENS did that here. Let me ask you next about... The cases seem to go such that they are seem to go both ways on whether you read in a duty to mitigate from other jurisdictions. And the rationale that's most often supported for the position that you're advocating is otherwise your client wouldn't have an incentive to save the insurance company money, and the insurance company money has been saved by the client's efforts. How do we apply that in the case where, if I understand this one correctly, your client had a legal duty to mitigate the effects of that pollution event anyhow? With all due respect, Your Honor, I think you misunderstand. We had a duty to clean up here, and we cleaned up and they covered that. We did not have a legal duty to keep our plant open. The state of Georgia didn't say to us, you have to keep your plant open. Instead, we said to the state of Georgia, we need to keep our plant open. This is one of three plants in the country here. We need to keep this open for our purposes here. We understand that we have a huge pollution event here and we need to work with you. As set forth in the Burnett Affidavit, they did this in a couple of ways. They negotiated payments to the government to permit them to exceed acceptable levels. They did an ongoing effort of pumping contaminated water into temporary wastewater. These were all efforts to keep open the plant, not something that they were obligated to do by Georgia. Georgia said, clean it up. We said, we want to keep our plant open here. You had no legal duty to do the thing that you're seeking to cover money from, which is to avoid a suspension? I would submit, Your Honor, that there is a common law duty to mitigate damages here. That's what we believe. We met the two-part test that was set forth in the BICOR case. What's your cause of action? You're bringing an action. You want to recover money from the other side. Is it a breach of contract? Is it a quasi-contract? What is it? We are basically here, Your Honor, to enforce a breach of contract case, but to say that there is a common law duty that underlies that contract. That is what we are here to enforce. This was from day one how this case was framed. In the complaint, we relied on the Demers case. This is a term we read into the contract. The common law imposes on the contract, so you have a breach of contract action when they don't reimburse you. It's basically a cause of action under insurance law, Your Honor. It's a cause of action under insurance law that says that when a party saves money for the benefit of the insurer, the party is entitled to be reimbursed for that. With all due respect, Your Honor, when you say there's a split of authorities here, this isn't even a close question in terms of the recognizes this. They cite two cases here. The Roach Brothers case, which is almost an insult to this court to say to this court, gee, you might have decided by court differently had you read the Roach Brothers case, which came out later. That's just an insult to this court. Then they cite to a lower court case from California, the Grabeau case, which is again a case where there wasn't any triggering event here, Your Honor. We believe that there was a triggering event that is beyond any dispute here. We believe that we reacted properly here and that we are fully consistent with Massachusetts law and with the weight of authority from other jurisdictions that recognize this same exact point. For those reasons, Your Honor, we would respectfully request that the case be reversed and remanded for further proceedings consistent with the court below. Judge Lopez, do you have any questions? Yes, thank you. Your opponent says that there are insurance agreements that are written in such a way as to provide for the kind of recovery that you're seeking here, but you are sophisticated parties. This contract was not written in that way, and so you're asking us to invoke the common law in order to incorporate into the contract a provision that you did not bargain for. And Massachusetts law, you claim compatibility with Massachusetts law. There's a lot of Massachusetts law that says the courts are not supposed to invoke the common law to write a contract provision that could have been included, that could have been bargained for, and was not. So how do you respond to that contention? It's very interesting, Your Honor, Judge Lopez, that in that one sentence in the brief where they say there are other authority that they cite to, there is nothing in the record appendix that supports that point. But furthermore, Your Honor, I would call the court's attention to Judge Zobel's ruling in Demers here, where he says the duty to mitigate is there contrary to a policy provision to the contrary here. There was no policy provision that said steadfast, doesn't have to do anything beyond this particular thing here. Only in this event does steadfast do something. The mitigation issue on the shutdown clause is not implicated here, and therefore because steadfast did not advocate for a broader coverage to prevent it from being immune from the common law duty to mitigate, I could say that they were the sophisticated party that should have done otherwise here. Why do you say the clause was not implicated here, the mitigation clause? A standard contract analysis would look at this contract and would say, first, did the parties turn their attention to the subject of mitigation? The answer would be yes, there's a clause labeled mitigation. And what did the parties agree the mitigation duty would be, and did they specify, and they did, you would then have somewhat of a hurdle to then say that even though that's all they agreed to mitigation, there's this other thing hanging out there that they're deemed to have agreed to. With respect, Your Honor, I disagree because that covered one particular incident. If there is going to be a shutdown, KENS, we want you to mitigate, in which case steadfast will take care of that. It was silent on the other thing. What if there's not a shutdown? You're asking me, why didn't we have a clause saying we could get mitigation damages in this? Why didn't steadfast, which is the drafter of the contract, insert a clause that would say, you know, that common law principle where we have to pay for mitigation damages, that's out here. We're not going to do that. This issue really cuts both ways here, and in the Demers case, when you look at Judge Obell's reading, he makes clear here that common duty of mitigation is there, absent express language to the contrary, and we would submit to the court there was no express language to the contrary. Judge Lopez, do you have any more questions? No, thank you. No more. Thank you, Your Honor. Attorney Dolan, please introduce yourself on the record to begin. Good morning, Your Honor. May it steadfast insurance company. This is, from our perspective, a contract-based case. Ken's and steadfast were both parties to an insurance contract that set forth an agreed-upon allocation of risk. There are two sophisticated commercial entities. Both entities are sophisticated entities. They're in direct contractual privity with each other. They enter into a contract that specifically contemplates what would be covered and what would not be covered with regard to undisputed in this case that the policy itself does not provide coverage for the costs that are at issue here. So what happened is that, faced with that clear lack of coverage under the policy, Ken's filed this lawsuit in an effort to expand the contract under the guise of the common law. Before addressing the substance of the case law, there were a couple issues that came up in my brother's argument that I just wanted to clarify what the actual legal issue is here because I think it's actually quite narrow. As is set forth in the brief, steadfast did pay approximately $1 million for costs associated with the cleanup, the remediation of the release. All of the claims under the contract itself, they've all been dismissed with prejudice. They've been released. There is no claim under the contract that is left in this lawsuit. The only issue that was accepted from that settlement agreement and the sole issue presented for appeal is whether Ken's Food is entitled to, under the guise of the common law, recover for these costs that are undisputedly not covered by the policy. In addition, there were several arguments that were made that it's undisputed or as to what the specific costs were. That's never been litigated or subject to discovery. Those are just allegations at this point. As you may know, Judge Sorokin allowed the parties to brief the dispositive threshold legal before any discovery was done. He concluded that there is no recovery as a matter of law for these costs. Those were never subject to dispute or never subject to discovery. Other than to say that, I won't address the specific allegations with regard to the cost. If you could go back to the sophisticated parties negotiating this contract, particularly one of them is an insurer which presumably understands insurance law well. If I've got the dates right, at the time this most on-point case out there interpreting Massachusetts law was Demers, which I believe says there is this duty. If you'd look more widely and looked at the treatises and the law review articles, you'd see that while there's some split in the law, the majority of the cases seem to recognize a duty that would parallel the duty to mitigate. Why wouldn't we take your sophisticated parties argument and say presumably the parties are new or deemed to know about this common law ramification and they didn't rebut it? I think that argument is then foreclosed subsequently by the VisionAid case because what the VisionAid case says is that you cannot supplement a policy based on public policy arguments, which is the reason that is being advocated. I think the in-for-one, in-for-all rule is different and it's different for a material reason and that's that the in-for-one, in-for-all rule is a rule as to what a duty that exists in the contract means. It's a line of case law that says if you have a duty to defend that exists in the contract, it means that you have an obligation to defend the entire case and that's for the pragmatic reasons that the court has set forth in those cases. What the in-for-one, in-for-all rule is not and maybe a way to frame this would be is if you had an insurance policy that only required an indemnity obligation, you could not imply a duty to defend on the grounds that it would minimize a potential loss if you had a panel counsel come in and defend the insured. You can't create an additional coverage out of whole cloth or require an insurance company to assume a risk or an obligation that's not within the contract just based on public policy arguments. I assume given the argument you're making on your client having no duty to reimburse mitigation, it follows that your position would be that Ken's had no obligation to prevent a shutdown here, mitigate the damages from reaching the point of causing a shutdown. Yeah, I think there's two answers to that is that number one, just to be clear, I will answer the question but I think that number one under Vision Aid, it's not relevant to the analysis, who it would have benefited, who it would have not benefited. Those are all public policy or fairness arguments but the fundamental issue is that this is a concept that the insurance industry contemplates and as Judge Lopez noted, there are policy forms that provide this type of coverage, whether it's for... Well, you haven't showed us this. I wondered about that. It's a manuscript policy but I didn't find in the record any alternative policy form that they could have obtained in lieu of this one. It's on page 243 of the joint appendix. It's the first. There are policy forms that are not part of the steadfast policy that were exemplar forms that were provided to Judge Sorokin and then also on page 16 of our brief, we provided citations to cases that have analyzed those policy forms. For example, the interstate gourmet coffee roasters case. What is the evidence that those were on the menu of forms presented to this insured? Well, they were not presented to this specific insured but the concept is that... You're saying they're out there. Yes, that this is a policy that a sophisticated entity with the resources of millions of dollars as Ken's portrays themselves had the ability to weather through themselves or whether through an insurance agent, identify these types of policies, identify what their own risks were if there was a covered event and then obtain a policy that covered them. If your position is correct, then it seems to me that if I'm Ken's and I'm standing there and the pollution event is about to shut down my operations but I can spend $2 million to keep it from doing that and I look at the policy and I look at your interpretation of the policy, it seems I would say if I'm sure this is going to be less than $10 million in costs and shutdown costs, then I'm just going to let it happen and the insurance company will have to pay the $7 or $8 million that it causes and I won't have to pay anything other than my deductible. Yes, I would disagree with that because for a couple of reasons. Number one is that the post-loss mitigation provision does not allow them to just shut down operations if they don't have to and then secondarily... Now you're going back on your prior answer. Now you're saying they did have a duty to prevent the shutdown from happening. Well, that would be post-loss. So I guess what I'm speaking to is... We're talking about before there's been any suspension but there's been an event. Are you saying that under the contract, Ken's had a duty to take steps to prevent the shutdown from happening? I misunderstood your question. I apologize, Ron. I was speaking to... If they didn't have a duty, then they would have done that economic analysis that I just said and if they were convinced the suspension cost would be less than $10 million, it would be irrational for them to spend anything in excess of the deductible to prevent the shutdown. That doesn't seem... We then end up with $7 or $8 million of damages rather than $2 million. Well, I think a couple of things... I think the solution to that would be for them to obtain a policy that would provide that coverage, not to shift it to an insurance company that did enter into a contract. We have this policy. We're talking about your interpretation of this policy, I think, would lead in an elective to the economic analysis I just proposed. If it didn't, explain why. Well, that would be because they don't have... It would not be an uncovered loss. It would be a covered loss if they had a different type of policy so that under this type of policy, that may be... If that were their solution, they would have the ability to assess their own public relations or other considerations, their own self-interest in keeping their business up and going and they did receive the revenue when they kept their business up and going. There's other considerations involved as to whether that's the appropriate calculus and a way to approach it, but it's not a basis under Vision 8 or under the other case law to shift that obligation over to the insurance company that did enter into a contract in this case that does not have that coverage. What do you say about... Doesn't Massachusetts tend to follow Couch? Well, I think in the absence of other cases that have addressed the issue, and I think one point that I was going to make is that I agree with your honor that this is really a prevention case. What the issue before the court is, can they recover under the common law for the cost to undisputedly didn't occur to the extent that anything related back to the original covered incident under coverage H, that's all been paid to the tune of more than a million dollars under what was actually provided and it's been dismissed. So the issue before the court is actually a prevention case, but they prevent... Dan's argument, we just heard that this isn't a prevention case because the event had already occurred and was unfolding and so it was just a question of what it was going to do, how many coverages it would implicate under the policy. Well, yeah. Well, that would conflate the two coverages because it's two different concepts, two different coverage limits that would be at issue. So there's a coverage C, which was paid to the tune of more than a million dollars, which is everything for the remediation, cleanup, emergency costs associated with addressing the event that happened. And then secondly, there is a completely separate concept of this coverage H under a separate endorsement with a separate coverage limit, which is what they allegedly prevented. So the things that arose out of the first incident or that were covered related to the first or the underlying pollution event were covered and were paid and that claim has been dismissed. And that's why I said that the issue here is narrow. The issue is, can they get coverage for preventing something that never happened when that coverage could have been obtained, but it wasn't? And it's under the Vision Aid case. What the Vision Aid case says is that you can't shift that to an insurance company as a matter of public policy, that what they said in that case, which as your honor knows, is that was the duty to defend exists, whether it encompasses a duty to pay for affirmative compulsory counterclaims. And they say you can't create that additional duty and impose that duty that doesn't exist under the contract on an insurance company, especially based on public policy arguments, because what the court said is not only does it not get you there, it said even if we agreed with the public policy rationale, we can't consider it. That's not a basis for imposing an additional duty under Massachusetts. Let me ask Judge Lopez if he has any questions. Thank you. One question. Your argument seems to reduce to the proposition that the well-established common law concept of mitigation of damages only applies when a triggering event has occurred. It does not apply when there's a contention that something could have been done to prevent the triggering event. Here, the triggering event, I understand your argument to be, was the suspension of operations. If there had been a suspension of operations, then under the common law, perhaps even under this contract, it would have been a duty to mitigate. But before the triggering event, the common law concept does not even apply. Is that your position? It's that it doesn't shift over to the insurance company. That's the Grebo case that was the California case that we cited that gave the hypothetical question of in an insurance policy, if you have a homeowner who has a tree leaning ominously toward their house and they cut down the tree and then they seek those costs and say, well, we prevented a loss from occurring, that that type of preventing the loss before it ever happens is not something that is shifted over to the insurance company, whether as a matter of mitigation or otherwise. Well, so it sounds like the answer to my question is yes. Mitigation does not apply before the triggering event. It only applies afterwards. Then the insurer has an obligation to mitigate the extent of the damages that flow from the triggering event. I gather that's your to say they may have an incentive to prevent it and they may have an incentive to not have a claim or to not have something like this happen, but they don't have a compensable duty to mitigate that would be recoverable from the insurance company. Thank you. Thank you. Why should we agree that the triggering event was not the new pollution event that triggered coverage under the policy generally? Because there are two separate coverages, coverage C, coverage H. They both have their own triggering language and requirements and conditions precedent to trigger coverage. And moreover, that coverage C, which was the event that did occur, the loss under that coverage was paid and was dismissed with prejudice. So the narrow issue, again, before the court is only with regard to prevention of the suspension of operations that did not happen. So if they'd stopped operations for 20 seconds and then put in the new equipment, there'd be coverage? No, because it still wouldn't be compensable under the insurance contract. I think that's a point that we addressed in our brief, but we haven't addressed yet an oral argument. I guess I'm out of time. But in any case, there is no provision in the steadfast insurance policy that even if they have a duty to mitigate, that those costs are then recoverable as from steadfast. And as we've mentioned, there are policies, the extra expense coverage. And we did provide the model forms or in the joint appendix. And we did cite the cases that address that type of language so that even if the duty is triggered, it does not mean that it's compensable from steadfast. Thank you. Thank you. Attorney Green, please proceed with your rebuttal time by introducing yourself back on the record. Yes, may it please the court, Lawrence Green for Ken's Foods. Imagine, your honors, if after the pollution event that occurred, Ken's had an easy fix to prevent a plant shutdown, but did not exercise its duty to mitigate that easy fix. And imagine that the plant had been shut down and we would have said to steadfast, OK, in this month alone, we lost $10 million pay over the policy limit. Can you imagine what that case would have looked like? Steadfast would have said, wait a second, we're not going to pay you that $10 million. You had an obligation to mitigate damages, which is why the common law duty of mitigation, which is so well established in American jurisprudence, is there as a very pervasive and important duty. I just heard counsel pretty much concede, well, you have to look at two parts of this policy. If under the hypothetical, as I just outlined, we said we want our $10 million, $10 million, that part of the policy was triggered because of the pollution event. And then steadfast would say, wait, you didn't exercise your right to the easy fix here. With respect to a position that makes no sense, your honor, even in the VisionAid case, which, as you pointed out, Judge Kayada, is a case that recognizes a common law duty. Insurance policies cannot be read in isolation. The common law duty is out there, and especially with Vicor, Demers, and all of the other cases we cited versus Roach Brothers and Rabo, two cases that didn't even have a triggering event, the overwhelming weight of authority should tell this court that this case needs to be reversed and remanded. What's your response to the point made by your brother counsel that on page 16 of his brief referring to the interstate gourmet and Verrill Farms cases and then page 243 of the appendix, the record is clear here that there were alternative policies and coverages that your client could have obtained that did have clauses providing for reimbursement of litigation expenses? Then I think we then have the question, two questions, your honor. The first question is, were any of these alternatives provided to Ken's? When that question was asked of my brother, there's no evidence to suggest that. Then the second question that was asked by the court that I think should be asked here is, okay, when this policy was written, Demers was probably the most applicable case out there. This policy is written under Massachusetts law. Why didn't you steadfast, the sophisticated insurance companies say, you know what? We might be concerned about Demers. We're going to write up this clause that says in no way, shape, or form are we going to be responsible for mitigation losses. Those are the responses, your honor. Let me just ask Judge Lopez if he has any final questions. Nothing further. Thank you. Thank you. Thank you, your honor. That concludes our argument.